LA SALLE NATIONAL BANK, Trustee, Plaintiff-Appellant, *v.* THE VILLAGE OF VILLA PARK *et al.*, Defendants-Appellees.

Second District (1st Division)    No. 75-487

Opinion filed October 7, 1976.

Michael R. Galasso, of Lombard, for appellant.

James K. Young and Ralph J. Gust, Jr., of Young & Gust, of Lombard, for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:
The plaintiff herein filed a complaint against the Village of Villa Park and the Building Commissioners seeking to enjoin the Village and its agents from interfering with the plaintiff's use of its property, particularly the rental of snowmobiles to be operated on plaintiff's premises. The Village, in turn, filed a countercomplaint for injunctive relief, seeking a temporary restraining order from the operation of the snowmobile rental business and that a final order be entered enjoining the plaintiff from the use of said premises for snowmobiling purposes or any other purpose except those authorized and permitted under the applicable zoning ordinance of the Village of Villa Park. The trial court entered an order temporarily restraining the plaintiffs (inadvertently described therein as defendants) from the use of the premises for snowmobiling purposes. Subsequently the plaintiff filed an amended complaint for declaratory judgment seeking to have the court hold the present zoning ordinance of the Village of Villa Park unconstitutional as applied to the premises in question and that they be allowed the use of the premises not only for the presently authorized miniature golf course and golf driving range but for other recreational activities, including snowmobiling, tennis courts, ice skating rink, swimming pool, commercial slide, baseball batting cages and a retail sporting goods and clothing store. The trial court, after a hearing, entered an order pertaining to plaintiff's property, Lots 29 and 31 (inadvertently described in said order as Lots 29 and 37), holding that the plaintiff had the right to use his premises under the zoning classification O-R pursuant to Villa Park Ordinance 1195; that plaintiff had the right to use the premises under former zoning Ordinance 861 under zoning classification B-3 thereof; and lastly, that he had the right to use the property for a golf driving range and miniature golf course. The trial court then permanently enjoined the plaintiffs from using the property for any other purposes than those set forth in the O-R zoning classification under Ordinance 1195 of the Village of Villa Park or under the B-3 classification under Ordinance 861 or as a golf driving range and miniature golf course. The plaintiff appeals.
On September 9, 1968, the plaintiff, the titleholder of record of Lot 31 and one Peter Paul Gaddy, the former titleholder of record of Lot 29, entered into an annexation agreement with the Village of Villa Park which, among other things, provided that Lot 29, sought to be annexed, would be zoned B-1 or any other zoning which would permit the use of

the premises for a minature golf course and/or golf driving range. It is apparent that Lot 31 at that time was already within the corporate limits of the Village of Villa Park. On April 23, 1969, the Village of Villa Park enacted an ordinance rezoning Lot 29 and 31 under the B-3 zoning classification of the then existing zoning ordinance, the B-3 classification being known as the "Highway Business District." At the time of the annexation and the rezoning of plaintiff's property zoning Ordinance 861 of the Village of Villa Park, enacted April 29, 1963, was in full force and effect. On September 28, 1970, the Village of Villa Park enacted a new zoning ordinance, 1195, and plaintiff's property was rezoned under the classification of O-R "Office Research" which is, in the wording of the ordinance:

"A district established to provide within the community attractive specific area for the conduct of predominately non-retail commerce."

We thus have a situation where an annexation agreement provides for the classification of plaintiff's property as B-1, which is a retail business district; a subsequent ordinance reclassifying plaintiff's premises as B-3, a highway business district classification which includes all of the uses allowed in the B-1 retail business district; and finally the enactment of a new zoning ordinance which reclassified plaintiff's premises under the O-R, office research classification. New zoning Ordinance 1195, for all practical purposes, carried over the B-3 classification with C-3 under the new ordinance. As will be seen from the above, trial court in its order allowed the plaintiffs to use the premises for the uses set forth in the O-R zoning classification of the new Ordinance 1195 as well as under the B-3 classification under the old Ordinance 861 of the Village of Villa Park.

The first contention of the plaintiff is that the trial court erred in restricting the plaintiff's use of the subject property to the B-3 zoning classification as the same is nonexistent and, secondly, such a holding does not allow the uses that were available in practice at the time the subject property was zoned B-3. In support of the first part of this contention the plaintiff has cited *Meegan v. Village of Tinley Park* (1972), 52 Ill. 2d 354, 288 N.E.2d 423. In *Meegan* the agreement specifically provided that no subsequent change in the zoning ordinances would affect any rights granted under the annexation agreement. That provision is not to be found in the annexation herein. Nonetheless, the court in *Meegan* found that as long as the annexation agreement was in effect the rights granted under that agreement and the zoning ordinance pertinent thereto could not be curtailed or impaired by the amendment of the zoning ordinance. That is exactly what the trial court found herein, *i.e.,* that plaintiff had the right to use his property as zoned under the prior zoning classification of B-3. The question then arises, what uses were authorized under the

classification B-3? The plaintiff incorrectly points out that B-3 classification does not include a B-1 or a B-2 use. That is incorrect as the B-3 classification does, in fact, specifically allow the uses therein found under the B-1, retail business district. However, we find no provision in either B-1, B-2 or B-3 of the prior ordinance which pertains to recreational uses. The plaintiff argues that the understanding was the B-3 category would allow recreational uses requested and/or discussed by the plaintiff. In support of this argument plaintiff calls our attention to various exhibits filed herein which purportedly included more than a golf driving range and miniature golf course but also included recreation areas, ice skating, swimming pools and other recreational activities. We have examined the exhibits furnished us and do not find any reference to the other contemplated uses, with the exception of a statement made by the attorney for the plaintiff at a public hearing where plaintiff's attorney summarized the annexation agreement that "B-1 zoning is required as a proposed use of the property as a miniature golf course and/or golf driving range, an ice skating pond, and the construction of a small building for storage of equipment and to act as an office for the business." There is nothing in the record herein other than that reference which would indicate that the annexation agreement in any way included any recreational activity other than the miniature golf and golf driving range.

■■ In contending that the court erred in restricting plaintiff's use of the premises to a B-3 zoning classification, which is nonexistent, we find that the plaintiff received the zoning classification that he prayed for in his amended complaint. The amended complaint asked:

"(b) That judgment be entered herein finding and declaring that the Plaintiff and all persons claiming by, through and under it, have a clear legal right to maintain and use the premises hereinabove described for such uses as are permitted under the B-3 provisions of the zoning ordinances of the Village of Villa Park and further declare that said use include the right to operate a snowmobile rental business, tennis courts, ice skating rink, swimming pool, commercial slide, baseball batting cage and retail sporting goods and clothing store.

(c) That after the rights of the parties have been declared by the Court as aforesaid, the Defendant herein, its officers, agents, and employees be directed to approve the B-3 use, and to permit the development thereof of the above uses in paragraph 'B' above, free from the limitations and restrictions of the Village of Villa Park."

Examination of the record further discloses that not until the post-trial motion was made did the plaintiff raise the question of invalidity of the B-3 zoning classification as applied to plaintiff's property. The plaintiff

also raised the doctrine of equitable estoppel for the first time in the post-trial motion following the final judgment in this case. The Village properly points out that the plaintiff cannot request a C-3 zoning classification under the new ordinance and raise the question of equitable estoppel for the first time in a post-trial motion. The plaintiff received what he sought in his amended complaint and that is that the property be declared to be zoned, as was done, under the B-3 provisions of the prior ordinance. We therefore find that the trial court did not err in finding that the plaintiff was entitled to use his property under the provisions of the prior existing B-3 ordinance being the relief sought by the plaintiff in his amended complaint.

■■  We turn then to the second contention of the plaintiff, namely that the trial court erred in denying plaintiff's request for a restraining order against the Village, enjoining them from interfering with the plaintiff's operation of a snowmobile rental business. This argument is premised upon the doctrine of equitable estoppel and, as indicated above, was first raised in the post-trial motion. In support of this argument the plaintiff contends that the Village attorney and the then building commissioner of the Village advised the plaintiff in substance that snowmobiling would be permitted, under the provisions of the annexation agreement. As the result of this, plaintiff contends that he invested $22,000 in the purchase of snowmobiles and therefore the Village is collaterally estopped from denying such use of the subject premises. Examination of the new zoning Ordinance 1195 discloses that there is a provision under the C-2 zoning classification thereof for "recreation centers." The C-3 zoning classification includes all the permitted uses allowed under C-2 zoning. We do not reach the issue of whether or not a "recreation center" includes the use of premises for snowmobiling purposes. As we have stated, the plaintiff may not seek relief in his complaint, to-wit: the right to use his property under the B-3 zoning classification of the prior Ordinance 861, and when that relief is granted by the court, then in a post-trial motion seek to obtain additional relief, to-wit: the right to use his property under the C-3 zoning classification of the new zoning Ordinance 1195. Plaintiff contends his dilemma can only be solved by an order restraining the Village from interfering with the plaintiff's use of this property under the C-3 zoning category, which includes recreational use. That is not what he prayed for in the trial below. As was stated, the relief sought in his complaint was that he be allowed to use his premises under the B-3 zoning category of Ordinance 861 and that is the relief that was granted to him pursuant to his complaint.

With the exception of the use of the premises for snowmobiling, this court fails to see how the use of these premises for tennis, swimming or ice skating would be harmful to the particular neighborhood in question.

It is obvious that the plaintiff may seek a variance from the Village for the use of the premises for such purposes. The judgment of the trial court below is affirmed.

Affirmed.

SEIDENFELD and HALLETT, JJ., concur.